UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Araceli Cadenas

**PLAINTIFF,**

v.

Butterfield Health Care Group, Inc. and
Butterfield Health Care II, Inc. d/b/a
Meadowbrook Manor of Naperville

**DEFENDANTS**

Case No. 12 cv 7750
Hon. John J. Tharpe Jr.

# PLAINTIFF'S RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS PURSUANT TO LOCAL RULE 56.1(d)

Plaintiff, Araceli Cadenas, by and through her attorney, Wilton A. Person, and in response to Defendant's Local Rule 56.1 Statement of Material Facts, states as follows:

**I. The Parties, Jurisdiction and Venue.**

1. Cadenas is an Illinois resident and a former employee of Meadowbrook. (Compl. ¶¶ 1, 6, 21).

**Response**: Undisputed.

2. Defendants Butterfield Health Care Group Inc. and Butterfield Health Care II, Inc., doing business as "Meadowbrook Manor of Naperville," are Illinois corporations that provide healthcare services through a nursing home facility in Naperville, Illinois. (Compl. ¶¶ 2-4).

**Response**: Undisputed.

3. This Court has jurisdiction over Cadenas' claims under 42 U.S.C. § 2000(e)(5), 28 U.S.C. § 1331 and 28 U.S.C. § 1343. (Compl. ¶ 5).

**Response**: Undisputed

4. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(1) and (b)(2) and 42 U.S.C. § 2000e-5(f)(3).

**Response**: Undisputed

5. Meadowbrook Manor of Naperville is one of three Butterfield Health Group facilities providing comprehensive nursing care and rehabilitation services for convalescent, chronically ill and retired individuals. (Cadenas Dep. p. 25:4-15; Soppi Dep. p. 14:2-5; Soppi Decl. ¶ 4, Ex. A, p. CAD000102).

**Response**: Undisputed

6. On September 20, 2011, Cadenas was hired to work at Meadowbrook's Naperville location as a C.N.A. or Certified Nurse Assistant. (Cadenas Dep. pp. 18:22-23, 24:9-16; Answer ¶ 6; Soppi Decl. ¶ 30).

**Response**: Undisputed

7. The C.N.A. job description describes the "Major Tasks/Standards of Performance" of the job and requires (among other things) that C.N.A.s: (a) perform basic nursing procedures including ROM (range of motion) exercises, placing and removing splints, bed mobility, transfers, ambulation, locomotion, dressing, bathing, eating and toileting; (b) lift, move and transfer residents safely; and (c) turn and re-position residents who are unable to self perform these tasks independently at least every two hours. (Cadenas Dep. Ex. 1 at CAD000062,64, 65; Soppi Decl. ¶ 19).

**Response:** Undisputed.

8. Cadenas agrees that the C.N.A. job description is an accurate reflection of her duties, and signed a copy of the job description upon being hired. (Cadenas Dep. Ex. 1 at

CAD000067; Cadenas Dep. p. 29:2-5).

**Response**: Undisputed.

9. Cadenas described the C.N.A. job as being "physically demanding." (Cadenas Dep. p. 27: 6-9).

**Response**: Undisputed.

10. According to Cadenas (and the job description), C.N.A.s bathe, groom and dress residents, assist residents with walking, transfer residents from beds to wheelchairs, move residents from one location to another (including for meals, physical therapy and activities within the facility), assist them in going to the bathroom, and provide physical help for passive and active range of motion activities (PROM and AROM). (Cadenas Dep. Ex. 1 at CAD000062;Cadenas Dep. pp. 25:16-26:4, 27:16-29:5; *see also* Soppi Decl. ¶ 20).

**Response**: Undisputed.

11. Cadenas agrees that the C.N.A. job requires pushing over 20 pounds as well as lifting, moving and transferring residents safely. (Cadenas Dep. p. 49:5-12; 51:13-17; 53:7-13).

**Response**: Disputed in part. Cadenas agrees that she testified to such statement. Cadenas denies that the fact is material to her discrimination allegations.

12. None of the residents with whom Cadenas worked weighed less than 20 pounds. (Cadenas Dep. p. 53:10-13).

**Response**: Disputed in part. Cadenas agrees that she testified to such statement. Cadenas denies that the fact is material to her discrimination allegations.

13. To prevent resident or C.N.A. injury in performing patient lifts, moves and

transfers, Meadowbrook also has a Limited Lift Resident Handling Policy, which Cadenas acknowledged and signed. (Soppi Decl. ¶ 22, Ex. B; Soppi Dep. p. 19:7-15).

**Response**: Disputed in part. Cadenas does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

14. According to the Limited Lift Resident Handling Policy, every resident is classified by the type of assistance they need from C.N.A.s and other trained professionals in lifts, moves and transfers. (Soppi Decl. ¶ 23, Ex. B).

**Response**: Disputed in part. Cadenas does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

15. Some residents are able to transfer independently, others require a lift by one person or two, some require assistance with a "hoyer" or mechanical lifting device, and still others require lifting with sliding boards and either one or two people. (Soppi Decl. ¶ 23, Ex. B).

**Response**: Disputed in part. Cadenas does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

16. Use of safety or "gait belts" is mandatory under the Limited Lift Resident Handling Policy. (Soppi Decl. ¶ 24, Ex. B). All C.N.A.s are required to carry gait belts at all times to assist residents with lifts, moves and transfers. *Id.*

**Response**: Disputed in part. Cadenas does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

17. The gait belts are placed around a resident's chest or waist and used to pull the resident to standing so that they can be lifted, transferred or moved. (Soppi Decl. ¶ 24, Ex. B;Cadenas Dep. p. 78:1-9).

**Response**: Disputed in part. Cadenas does not dispute the statement. Cadenas denies that the fact is material to her discrimination allegations.

18. C.N.A.s are required to use their own weight to pull and lift the weight of the resident. (Soppi Dep. p. 19:7-15; Soppi Decl. ¶ 24, Ex. B; Cadenas Dep. p. 78:1-19).

**Response**: Disputed in part. Cadenas does not dispute the statement. Cadenas denies that the fact is material to her discrimination allegations.

19. All of these lifts require the C.N.A. to pull, push and/or lift a minimum of 20 pounds. (Soppi Decl. ¶ 25; Soppi Dep. p. 19:7-15).

**Response**: Disputed in part. Cadenas does not dispute the statement. Cadenas denies that the fact is material to her discrimination allegations.

20. Pushing residents in wheelchairs also requires using force of over 20 pounds. (Soppi Decl. ¶ 25; Cadenas Dep. p. 49:8-15).

**Response**: Disputed in part. Cadenas does not dispute the statement. Cadenas denies that the fact is material to her discrimination allegations.

21. Company policy requires that "[e]ach employee hired is expected to fulfill the essential physical requirements of the job description of his or her position." (Soppi Decl. ¶ 5,Ex. A, p. CAD000127; Soppi Dep. p. 21:8-13).

**Response**: Undisputed.

22. Meadowbrook also has a policy of only offering light duty work to employees who have work-related injuries. (Soppi Dep. pp. 14:20-15:6, 16:2-7, 18:1-11; Soppi Decl. ¶ 6).

**Response**: Disputed in part. Cadenas denies that the fact is material to her discrimination allegations. Cadenas does not deny that such an unwritten policy actually exists.

23. Meadowbrook Manor's policy *does not* offer light duty for non-work related injuries. (Soppi Decl. ¶ 7)

**Response**: Disputed in part. Cadenas denies that the fact is material to her discrimination allegations. Cadenas does not deny that such an unwritten policy actually exists.

24. Employees with a non-work related injury and/or work restrictions are not offered light duty but may take one or more types of leave offered by Meadowbrook if eligible. (Soppi Decl. ¶ 8; Ex. A, pp. CAD000120-125).

**Response**: Disputed in part. Cadenas denies that the fact is material to her discrimination allegations. Cadenas does not deny that such an unwritten policy actually exists.

25. Company policy provides for several employee leave opportunities, including FMLA leave, disability leave or personal leave, if the employee has been employed for over a year. (Soppi Decl. ¶ 9; Ex. A, pp. CAD000120-125).

**Response:** Undisputed.

26. If an employee with a non-work related restriction has not been employed for over a year, the Company considers the restriction to be a voluntary resignation with the option to return to work once the restriction is lifted. (Soppi Decl. ¶ 10).

**Response:** Disputed. Cadenas disputes that the Defendant considers the restriction to be a voluntary resignation with the option to return to work once the restriction is lifted. Pl. Ex. B., Soppi Dep pg. Pg. 19, 16- 22, Pg. 20, 1-4. Pg. 29, 19-22, Pg. 30, 3-15, Pg. 31, 1-22, Pg. 32, 1-16., Pg. 33, 18-21.; Defendant's Tab A, Cadenas Dep. Pg. 61, 1-9, Pg. 84, 3-10; Defendant's Tab C, Exhibit A, CAD 000139; see also Pl. Ex. E; Pl. Ex. K, Pg. 2, ¶7.

27. Employees who become pregnant and are allowed to work without restriction

continue to work as scheduled throughout their pregnancies. (Soppi Dep. p. 18:1-3; Soppi Decl.¶ 11).

**Response:** Undisputed.

28. Within the last five years, at least seven other pregnant employees who were not restricted by doctor's notes during their pregnancies worked during their pregnancies until they each decided to take some form of leave as described above: Emily Badota, R.N., Danell Evans, C.N.A., Tashanda Randall, C.N.A., Daisy Habon, R.N., Annabel Chavez, C.N.A., MariaPerez, C.N.A. and Irma Almanza de Perez, C.N.A. (Soppi Decl. ¶ 12).

**Response:** Disputed in part. Cadenas does not dispute that Soppi's declaration contains such statements. Cadenas denies that the fact is material to her discrimination allegations.

29. No Meadowbrook Manor employee has ever been offered light duty for restrictions related to a non-work related injury, including for pregnancy. (Soppi Decl. ¶ 13).

**Response**: Disputed in part. Cadenas does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations. Objection: Factual assertion is not supported by documentary evidence.

30. Cadenas was unaware of Meadowbrook's policy of offering light duty only for work-related injuries. (Cadenas Dep. p. 40:5-7; Cadenas Dep. Ex. 2).

**Response**: Disputed. Cadenas was not initially aware that Defendant's had any "light duty" policy. Pl. Ex. A, Cadenas Excerpt Dep. Pg. 5:7-21[1]; Pl. Ex. B. Soppi Dep. Pg. 14:20-22, Pg. 15:1-3.

31. On May 7, 2012, Cadenas saw her physician Dr. Dawn Collier because she was pregnant. (Cadenas Dep. 46:5-18).

**Response:** Undisputed

32. Cadenas explained that she was a C.N.A. for Meadowbrook and that she helped "residents with their activities of daily living as far as helping them get in their wheelchair changing them, et cetera, et cetera." (Cadenas Dep. p. 46:5-18).

**Response:** Undisputed.

33. Dr. Collier wrote a note stating that Cadenas was 14 weeks pregnant and that "Activity is restricted as follows: No lifting, pushing, pulling over 20 pounds." (Compl. ¶ 9;Cadenas Dep. p. 44:6-16, 46:19-47:9; Cadenas Dep. Ex. 5).

**Response:** Disputed. Rule of Completeness. The full content of the letter is not stated in the statement. Cadenas does not dispute that the note stated *in part* that Cadenas was 14 weeks pregnant and that "Activity is restricted as follows: no lifting, pushing, pulling over 20 lbs." Cadenas does not dispute that Defendant's Cadenas Dep. Ex. 5 is an accurate and fair representation of the first letter that Dr. Collier wrote.

34. At some point in the days following May 7, 2012, Cadenas delivered the note to Meadowbrook. (Soppi Dep. pp. 18:12-19:6).

---

[1] The court is advised that Araceli Cadenas' excerpt deposition, labeled as Pl. Ex. A is numbered pps 1-14 and should not be confused with the page numbering for Defendant's Tab A Deposition of Cadenas although the examination was conducted on the same day.

**Response:** Disputed. Cadenas delivered the first note from Dr. Collier to Joan Soppi on May 7, 2012. Pl. Ex. A Cadenas Excerpt Dep. Pg. 6:5-10

35. At some point between May 7 and 17, Cadenas received a voicemail from Soppi informing her that Meadowbrook does not offer light duty to pregnant employees, that she needed a note lifting her restrictions to return to work and that until she was released to full duty, Soppi would need to remove her from the schedule. (Cadenas Dep. p. 84:11-85:1; *see also* Soppi Dep. Ex. 1; Soppi Dep. pp. 18:12-19:6, 19:16-20:4).

**Response:** Disputed in part. Cadenas received a voicemail from Joan Soppi after May 7, 2012 but disputes that she was informed that Meadowbrook does not offer light duty to pregnant employees to the extent that she was already aware of this fact based upon her conversation with Soppi on May 7, 2012. Cadenas does not dispute that a summary of the voice mail is that Cadenas would need a note lifting her restrictions to return to work. Cadenas disputes that the voicemail stated that until she was released to full duty, Soppi would remove her from the schedule. Pl. Ex. B., Soppi Dep pg. Pg.20: 5-11, Pg. 21: 20-22, Pg. 22:1-14; Pl. Ex. A., Cadenas Excerpt Dep. Pg. 8: 21-24, Pg. 9: 1-24.; Defendant's Tab C, Exhibit C; see also Pl. Exhibit F; Pl. Exhibit K, Pg. 2, ¶¶10-14.

36. The voicemail stated: "Araceli - this is Joan. We need that note to say that you are able to work at full duty. Cuz if not, then we are going to have the letter that you did give us is going to be considered a resignation letter because we don't put people on light duty who are pregnant. And if you are needing light duty, then we would have to take you off the schedule until after you have your baby. So it's one way or the other. We need you to get us that letter before you can come back to work…." (Soppi Decl. ¶ 32, Ex. C; Soppi Dep. p. 20:5-19).

**Response:** Disputed.  Rule of Completeness. The full content of the voice message is not stated in the assertion. Cadenas disputes the statement in its entirety because it is incomplete and leaves out important context. Cadenas agrees that Defendant's Tab C, Exhibit C is a fair and accurate representation of a transcript of the voicemail message, see also Pl. Ex. G.

37. On May 15, 2012, Cadenas did not show up for work. (Cadenas Dep. p. 85:21-86:19).

**Response:** Disputed.  Cadenas disputes the improper characterization that she did not "show up for work". Exhibit K, Pg. ¶16-18.

38. Soppi considered Cadenas a voluntary resignation and asked Meadowbrook's Director of Nursing to remove Cadenas from the schedule. (Soppi Dep. pp. 21:20-22:6).

**Response:**  Disputed. Cadenas does not dispute that Soppi testified to the above statement but disputes that Soppi considered Cadenas a voluntary resignation.  Cadenas disputes that Soppi asked the Director of Nursing to remove her from the schedule prior to May 17, 2012.  Pl. Ex. A., Cadenas Excerpt Dep. Pg. 11: 12-24, Pg. 12: 1, Pl. Ex. B., Soppi Dep pg. Pg.20: 5-11, Pg. 21: 20-22, Pg. 22:1-14, Pg. 23:7-22, Pg. 24:1-6; Defendant's Tab A, Cadenas Dep. Pg. 61: 2-9, Pg. 84: 11-24, Pg. 85: 1; Defendant's Tab C, Exhibit C; see also Pl. Exhibit F;  Pl. Ex. K, Pg. 2, ¶7.

39. On or around May 17, 2012, Dr. Collier wrote another note stating that Cadenas was 15 weeks pregnant and that "Activity is restricted as follows: no lifting, pushing, pulling over 20 lbs after 20 weeks of gestation." (Cadenas Dep. p. 58:13-16; Cadenas Dep. Ex. 4 at Exhibit B).

**Response:** Disputed. Objection: Rule of Completeness. The full content of the letter is not stated in the statement. Cadenas disputes when the letter was written. Cadenas does not dispute that the note stated *in part* that Cadenas was 15 weeks pregnant and that "Activity is restricted as follows: no lifting, pushing, pulling over 20 lbs after 20 weeks of gestation. See Pl. Ex. D.

40. On the same day, Cadenas returned to work and saw her name removed from the schedule. (Cadenas Dep. pp. 59:24-60:24).

**Response:** Disputed. The date is not identified in the statement above. To the extent that the statement refers to May 17, 2012, Cadenas does not dispute that she returned to work. on this day. Cadenas does not dispute that she was removed from the schedule on May 17, 2012.

41. Cadenas went to Soppi to ask her why her name was removed and gave the second note to Soppi. (Cadenas Dep. p. 61:1-3; Cadenas Dep. Ex. 4 at Exhibit B).

**Response:** Undisputed to the extent that the date referenced is May 17, 2012.

42. Soppi informed Cadenas that she had taken her off the schedule because she had weight restrictions on her ability to work, that Meadowbrook does not offer light duty for nonwork related injuries or conditions, and that she could come back to work after the baby was born. (Cadenas Dep. p. 61:1-9; Soppi Dep. pp. 23:7-24:6).

**Response:** Disputed. Cadenas disputes the accuracy of the above referenced conversation between herself and Soppi. The factual assertion above is not supported by the specific citation to the depositions. Cadenas, Dep. Pg. 61:1-9, Pl. Ex. A Cadenas Excerpt Dep. Pg. 11, 15-24, pg. 12, 1-13; Pl. Ex. B., Soppi Dep. Pg. 26: 1-14; Defendant's Tab A, Deposition Ex. 4; see also Pl. Exhibit D; Pl. Ex K, Pg. 3,¶¶20-26

43. In a document titled "Personnel Change of Status," dated May 17, 2012, Soppi listed Cadenas' status as a resignation, stating "can not work full duty C.N.A. position due to pregnancy with doctor note restrictions." (Soppi Dep. Ex. 5).

**Response:** Disputed . Cadenas agrees that the document states the information as described but disputes that she resigned and that she was unable to work full duty on May 17, 2012. Cadenas, Dep. Pg. 61:1-9; Pl. Ex. A, Cadenas Excerpt Dep. Pg. 11, 15-20, 22-24, Pg. 12, 1-12; Pl. Ex. C.; Pl. Ex. B., Soppi Dep. Pg. 24, 15-22, Pg. 25, 1-10, Pg. 26, 1-14, Pg. 26, 16-22, Pg. 27 6-11, 16-22, see also, Pg. 10, 5-11, Pg. 28 16-22

44. Soppi did not offer Cadenas FMLA, disability leave or personal leave because she was not employed for at least a year. (Soppi Decl. ¶¶ 9, 30).

**Response:** Objection. State of Mind. Cadenas does not dispute that Soppi testified that she did not offer Cadenas FMLA, disability leave or personal leave because she was not employed for at least a year. To the extent that Soppi did not offer FMLA, disability leave or personal leave as it is consistent with the written Butterfield Health Care group Employee Handbook, Cadenas does not dispute this fact.

45. Cadenas gave birth on November 3, 2012. (Cadenas Dep. p. 10:7-8).

**Response:** Undisputed.

46. Following the birth of her child, Cadenas never requested to return to work at Meadowbrook. (Cadenas Dep. p. 61:10-21).

**Response:** Undisputed.

47. On December 12, 2012, Soppi wrote Cadenas a letter offering to unconditionally return Cadenas to her position as a C.N.A. (Cadenas Dep. Ex. 7).

**Response:** Undisputed.

48. Cadenas refused the offer of re-employment. (Cadenas Dep. p. 63:10-64:22).

**Response:** Undisputed.

49. Cadenas' only basis for believing that she was discriminated against on the basis of pregnancy is because Meadowbrook does not offer light duty to employees with non-work related injuries or conditions. (Cadenas Dep. p. 41:6-42:3).

**Response:** Disputed. Objection: Legal Conclusion. The material cited does not support this specific allegation because there is no mention in the cited pages of the terms "only", "light duty", or "non-work related injuries or conditions". The prior line of questioning prior to the cited material is ambiguous and confusing. Cadenas denies that the only basis for believing that she was discriminated against on the basis of pregnancy was because Meadowbrook does not offer light duty to employees with non-work related injuries or conditions. Cadenas does not consider Defendant's "light duty" policy as a basis of discrimination for her claims. Cadenas Dep. Pg 40: 17-19, 23-24; Pg 41: 1-23; Pl. Ex. A, Cadenas Excerpt Dep. Pg. 6, 24, Pg. 11, 15-24, Pg. 12, 1-12; Pl. Ex. K, ¶ 20.

50. Cadenas filed a charge of discrimination with the EEOC, but the agency was "unable to conclude that the information obtained establishes violations of the statutes" and issued a "Notice of Suit Rights." (Compl. Ex. C; Cadenas Dep. Ex. 6).

**Response:** Disputed. Rule of Completeness. Legal Conclusion. Cadenas does not dispute that she filed a charge of discrimination. Cadenas does not dispute that the EEOC issued her a letter that provided her notice of her suit rights. Cadenas does not dispute that the letter stated *in part* that the agency was unable to conclude that the information obtained established violations of the federal statutes. However, Cadenas denies the truth of the

assertion because the fact asserted is incomplete, immaterial, and suggests an improper inference. Pl. Ex. H.

51. No other Meadowbrook employee has received light duty work for a non-work related injury at Meadowbrook. (Cadenas Dep. 69:6-11; Soppi Decl. ¶ 13).

**Response:** Disputed in part. Plaintiff does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations. Objection: Factual assertion is not supported by documentary evidence.

52. In 2012, Meadowbrook employee Sarah Choi, a Restorative Aide, sustained a non-work related back injury for which she requested light duty. (Soppi Decl. ¶ 14).

**Response:** Disputed in part. Plaintiff does not dispute that Soppi's declaration contains such statement. Cadenas disputes that the fact is material to her discrimination allegations.

53. Choi's request was denied because Meadowbrook does not provide light duty for non-work related injuries. (Soppi Decl. ¶ 14).

**Response:** Disputed in part Plaintiff does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

54. Choi returned to work after being cleared for full duty by her physician. (Soppi Decl. ¶ 14).

**Response:** Disputed in part. Plaintiff does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

55. Also in 2012, Meadowbrook employee Rachel Barkley, a C.N.A., broke her hand at home and requested light duty. (Soppi Decl. ¶ 15).

**Response:** Disputed in part. Plaintiff does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

56. Barkley's request was denied because Meadowbrook does not provide light duty for non-work related injuries. (Soppi Decl. ¶ 15).

**Response:** Disputed in part. Plaintiff does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

57. Barkley returned to work after being cleared for full duty by her physician. (Soppi Decl. ¶ 15).

**Response:** Disputed in part. Plaintiff does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

58. Cadenas named two potential comparators in her deposition: "Irma" who she contends had light duty and another unnamed C.N.A. "who had light duty" because of "something about her arm." (Cadenas Dep. pp. 69:12-20; 70:14-71:14).

**Response:** Disputed. Objection. The factual assertion is a legal conclusion and suggests an improper inference. Cadenas disputes that the fact is material to her discrimination allegations. Cadenas disputes that she labeled the persons referenced as comparators in her deposition. The cited material by Defendant does not support that Cadenas labeled the persons as comparators. Cadenas does not dispute that she named Irma and another unnamed person as persons that she knew had light duty. Cadenas Dep. Pg. 69:12-20; Pg. 70:14, Pg.71:14.

59. Cadenas did not remember whether the C.N.A. had hurt her arm while working or not working. (Cadenas Dep. p. 70:2-9).

**Response:** Disputed in part. Cadenas agrees that she testified to the statement. Cadenas denies that the fact is material to her discrimination allegations.

60. The only "Irma" who has been employed at Meadowbrook is Irma Almanza de Perez, a C.N.A. (Soppi Decl. ¶ 17).

**Response:** Disputed in part. Plaintiff does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

61. Almanza de Perez did not request or receive light duty for any non-work related injury or for either of two pregnancies. (Soppi Decl. ¶ 17).

**Response:** Disputed in part. Plaintiff does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

62. The only Meadowbrook employee with an arm injury was Christina Forget, a C.N.A. (Soppi Decl. ¶ 18).

**Response:** Disputed in part. Plaintiff does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

63. Forget injured her right arm at Meadowbrook while turning a resident. (Soppi Decl. ¶ 18).

**Response:** Disputed in part. Plaintiff does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

64. Forget received light duty for her *work related* injury. (Soppi Decl. ¶ 18).

**Response:** Disputed in part. Plaintiff does not dispute that Soppi's declaration contains such statement. Cadenas denies that the fact is material to her discrimination allegations.

65. Cadenas also alleges that Meadowbrook violated the Illinois Personnel Record Review Act by failing to provide her personnel file. (Compl. ¶ 32).

**Response**: Undisputed.

66. Cadenas received her personnel file from Meadowbrook. (Cadenas Dep. pp. 67:23-68:3).

**Response**: Undisputed.

67. Cadenas did not file a claim with the Illinois Department of Labor alleging that she had been denied her personnel records. (Cadenas Dep. p. 68:4-10).

**Response**: Undisputed.

.

|  | Respectfully submitted, |
|---|---|
|  | Araceli Cadenas |
|  | By: /s/ Wilton A. Person |
| Wilton A. Person | Attorney for Plaintiff |

*Attorney for Plaintiff*
The Law Office of Wilton A. Person
24330 Leski Lane
Plainfield, Illinois
815-254-2467

Dated: August 22, 2013

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Araceli Cadenas<br><br>**PLAINTIFF,**<br><br>v.<br>Butterfield Health Care Group, Inc. and Butterfield Health Care II, Inc. d/b/a Meadowbrook Manor of Naperville<br><br>**DEFENDANTS** | **Case No. 12 cv 7750**<br>Hon. John J. Tharpe Jr. |

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2013, I electronically filed the foregoing **Response to Defendant's Local Rule 56.1(d) Statement of Facts** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following:

Mary Ellen Vales
Ross H. Friedman
Morgan, Lewis & Bockius LLP
77 West Wacker Drive |
Chicago, IL 60601-5094

              s/Wilton A. Person
              _____
              Wilton A. Person, Attorney for Plaintiff