UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Araceli Cadenas<br><br>**PLAINTIFF,**<br><br>v.<br>Butterfield Health Care Group, Inc. and Butterfield Health Care II, Inc. d/b/a Meadowbrook Manor of Naperville<br><br>**DEFENDANTS** | **Case No. 12 cv 7750**<br>Hon. John J. Tharpe Jr. |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, ARACELI CADENAS, by and through her attorney, Wilton A. Person, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(b)(2) presents the following Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.

## I. Introduction

Plaintiff, Araceli Cadenas, hereafter "Cadenas", has brought this matter under Title VII as amended by the Pregnancy Discrimination Act. Cadenas, a certified nursing assistant working for Butterfield Health Care II, Inc. d/b/a Meadowbrook Manor of Naperville (hereafter "Defendant"), presented to the Defendant a *second* physician's note that lifted weight restrictions pursuant to a request from the Defendant's human resources director. Instead of allowing Cadenas to continue working like other similarly situated employees without restrictions, Defendant terminated her because of her pregnancy. Defendant is correct in its assessment that the Plaintiff is not disputing that Defendant

has an unwritten policy of providing light duty to employees injured on the job, but whether the unwritten "light duty" policy discriminates against pregnant women is immaterial with respect to the case before this court. Therefore, for these reasons and those stated hereinafter, Plaintiff requests that this Court deny Defendant's Motion for Summary Judgment with respect to Count I of her complaint.

## I. STATEMENT OF FACTS

Araceli Cadenas, hereafter, "Cadenas" worked for Defendant Butterfield Health Care II, Inc. d/b/a Meadowbrook Manor of Naperville, "hereafter" Defendant as a certified nursing assistant from September 20, 2011 until she suffered an adverse employment action on May 17, 2012. (Pl.'s 56.1(b)(3)(C) Stmt ¶1.[1]). On September 20, 2011, Cadenas was provided an employee handbook when she was hired by Defendant. (*Id.* ¶2). Defendant's employee handbook does not have any information about its "light duty policy". (*Id.* ¶3). Defendant's handbook does not contain any information that indicates that a presentation of a doctor's letter is considered a voluntary resignation. (*Id.* ¶4). Defendant never held any seminars regarding its "light duty" policies during Cadenas' employment with Defendant. (*Id.* ¶5). Cadenas first learned of Defendant's "light duty" policy after becoming pregnant and presenting Defendant's human resources director, Joan Soppi, hereafter, "Soppi", on May 7, 2012 with a letter from her doctor requesting work restrictions. (*Id.* ¶6). Cadenas was considered to be a good worker by Defendant. (*Id.* ¶7.) Cadenas did not have any instances of employee performance problems. (*Id.* ¶8). Cadenas presented Soppi with a letter requesting work restrictions from her obstetrician, Dr. Dawn Collier, on May 7, 2012.(*Id.* ¶9). Soppi was aware that Araceli

---

[1] For the sake of brevity, Cadenas has only set forth a brief summary of the material, undisputed facts in this case, which Cadenas has set out more fully in its Local Rule 56.1(b)(3)(c) State of Additional Facts.

Cadenas was pregnant.( *Id.* ¶10). On May 7, 2012, Soppi advised Cadenas that she would need to obtain a note without any restrictions in order to continue working for Defendant.( *Id.* ¶11). Soppi told Cadenas that she could continue to work through the end of the week. (*Id.* ¶12). On May 11, 2012, Joan Soppi left a voice message reminding Araceli Cadenas about obtaining a second letter from her doctor that did not include work restrictions. (*Id.* ¶13). Soppi was aware that Cadenas continued to work after she was presented with the first letter from Dr. Collier. (*Id.* ¶14). Cadenas' next scheduled work day after May 13, 2012 was May 15, 2012.( *Id.* ¶15). On the morning of May 15, 2012, Cadenas called off from work because she had scheduled a doctor's appointment to comply with Soppi's request for a letter without work restrictions. (*Id.* ¶16). Defendant's Meadowbrook Manor's policy was that a certified nursing assistant may call off work if he or she calls at least two hours before the certified nursing assistant's start time.(*Id* ¶17). At the May 15, 2012 doctor's appointment, Cadenas requested and received a second letter from Dr. Collier which removed all work restrictions to comply with Soppi's request.( *Id* ¶18). On May 17, 2012, Cadenas presented the second letter from Dr. Collier without work restrictions, but Soppi responded that she had to let Cadenas go because the second letter said that the work restrictions would be placed back on at twenty weeks pregnant. (*Id.* ¶19). Soppi admitted that she never sent any notice informing Cadenas that she was terminated or that she considered her to be resigned. (*Id.* ¶20). Defendant's employee handbook states that an employee may be disciplinarily discharged, may voluntarily resign, may be considered to have abandoned his or her employment by missing three consecutive work days, or may be laid off for economic reasons.( *Id.* ¶21). Cadenas did not voluntarily resign her CNA position with Defendant.

(*Id.* ¶22). A personnel change form would not be final until the administrator Patty Stambaugh signed the personnel change form. (*Id.* ¶23). Upon receipt of Dr. Collier's second letter without work restrictions, Soppi, as the Defendant's primary decision maker, had the authority to allow Araceli Cadenas to continue working. (*Id.* ¶24). Soppi was aware that Araceli Cadenas did not have any work restrictions on May 17, 2012. (*Id.* ¶25). Yesenia Alvarez, Ronet Mondee, Wendy Horan, and Esmerald Ortega were all non pregnant females employed by Defendant who did not suffer an adverse employment action on May 17, 2012 because of the possibility of future work restrictions. (*Id.* ¶26). Kenneth Reyes was a male Certified Nursing Assistant employed by Defendant who did not suffer an adverse employment action on May 17, 2012 because of the possibility of future work restrictions. (*Id.*¶27). At her April 11, 2013 deposition, Soppi stated that Defendant had voluntarily resigned Araceli Cadenas from her position as a certified nursing asistant. (*Id.* ¶28). Cadenas did not verbally tell Joan Soppi that she was resigning. (*Id.* ¶29). Araceli Cadenas did not issue a resignation letter in writing to Joan Soppi or any other Defendant employee.( *Id.* ¶30). Even after reading the language regarding "voluntary resignations" in Defendant's Employee Handbook, Soppi maintained that the Defendant had "voluntarily resigned" Cadenas. (*Id.* ¶31). Soppi admitted that the second letter from Cadenas's doctor that she considered to be Cadenas' resignation letter was not written by Cadenas.( *Id.* ¶32). On February 5, 2013 at Cadenas' Illinois Department of Employment Security Unemployment Hearing, Soppi stated under oath and subject to cross examination that she had terminated Araceli Cadenas. (*Id.* ¶33). Defendant has conceded that Cadenas suffered an adverse employment action. (*Id.* ¶34).

Araceli Cadenas was willing and able to perform all job duties without restrictions as a Certified Nursing Assistant working on behalf of Defendant on May 17, 2012. *Id.* (¶35).

## II. STANDARD OF REVIEW

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. Wis. Cent., Ltd. v. Shannon, 539 F.3d 751, 756 (7th Cir.2008).

## III. ARGUMENT

The record reveals that there are numerous triable facts concerning Plaintiff's sex and pregnancy discrimination claim (Count I).

**A. Plaintiff Can Show a Triable Fact Concerning Her *Prima Facie* Case With Respect to Her Title VII Claims**

Defendant argues that Plaintiff cannot show a triable fact concerning her *prima facie* case on her Title VII claims because Defendant only offered light duty to workers injured at work. This argument is not relevant to this case.

**1. Plaintiff Has Established a Prima Facie Case of Sex and Pregnancy Discrimination.**

To prove pregnancy or sex discrimination, a plaintiff may proceed under either the direct or indirect method of proof. In this case, Plaintiff succeeds on both.

**a. Plaintiff demonstrates a triable issue of fact for sex and pregnancy discrimination under the "direct method" of proof.**

The direct method of proof "permits a plaintiff to show, by way of direct or circumstantial evidence, that his employer's decision to take an adverse job action against him was motivated by an impermissible purpose, such as sex." Rhodes v. Ill. Dept. of Transp., 359 F.3d 498, 504 (7th Cir. 2004). Under the direct method, a plaintiff may prevail by "constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decision-maker." Id. An employer cannot discriminate against a pregnant employee simply because it believes pregnancy might prevent the employee from doing her job. Civil Rights Act of 1964, § 701(k), 42 U.S.C.A. § 2000e(k). Maldonado v. U.S. Bank, 186 F.3d 759 (7th Cir. 1999) Circumstantial evidence may consist of "suspicious timing, ambiguous statements. . . and other bits and pieces from which an inference of discriminatory intent might be drawn" or that "the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination." Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). Each type of evidence "is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together." Id. Under the direct method of proof, a plaintiff need not show similarly situated employees not in the protected class were treated differently. Taylor v. ADS, Inc., 327 F.3d 579, 581 (7th Cir. 2003).

In the present case, Soppi stated to Cadenas that the Defendant would have to "let her go" after Soppi read the second note from Cadenas' doctor which stated that the work restrictions would be placed back on Cadenas at twenty weeks of pregnancy. (Id. ¶19).

Soppi also stated that the second letter would be considered a voluntary resignation although Cadenas did not issue a written resignation letter to any of Defendant's employees or verbally state that she had resigned. (*Id.* ¶¶28-31). On February 5, 2013 at Cadenas' Illinois Department of Employment Security Unemployment Hearing, Soppi stated under oath and subject to cross examination that she had terminated Cadenas at an Unemployment Hearing without mentioning the alleged "voluntary resignation. (*Id.* ¶33). Although Soppi claimed that she did not remember whether Cadenas continued to work after she received the first doctor's letter from Cadenas with work restrictions, Defendant's own business records reflect that Cadenas worked for five additional days after Soppi received the first doctor's letter. (*Id.* ¶36). The "effective day" for Cadenas' alleged resignation was May 17, 2012 which was the same day that Cadenas provided Soppi the second letter without restrictions. (*Id.* ¶23). The personnel change form has a space for the employee's signature but the form was not signed by Cadenas. (*Id.* ¶37). Further, Soppi admitted that the personnel change form was not final until the nursing administrator, Patty Stambaugh, signed the document on May 18, 2012. (*Id.* ¶23). The timing of Cadenas' discharge, which the Defendant has finally conceded, the date of the personnel change form, and the many inconsistent statements from the decision maker, Joan Soppi, create a convincing mosaic of circumstantial evidence for a reasonable juror could infer intentional discrimination by Soppi. Soppi chose to terminate Cadenas because she presumed that Cadenas' pregnancy might prevent Cadenas from doing her job. ). <u>Maldonado v. U.S. Bank</u>, 186 F.3d 759 (7th Cir. 1999) Pursuant to <u>Madonado,</u> Cadenas was discharged because Joan Soppi believed that she would be unavailable in the future which makes the discharge discriminatory at its foundation. (*Id.*). These

uncontested facts support the circumstantial evidence mosaic which could lead a finder of fact to determine that there was impermissible sex discrimination.

> b. **Plaintiff demonstrates a triable issue fact for sex and pregnancy discrimination under the "indirect method" of proof.**

Under the indirect method of proof, known also as the McDonnell Douglas test, the plaintiff must establish that (1) she was a member of a protected class, (2) she was performing her job satisfactorily; (3) she experienced an adverse employment action, and (4) similarly situated individuals were treated more favorably. Rhodes v. Ill. Dept. of Transp., 359 F.3d at 504. If the plaintiff establishes a prima facie case, the employer "must articulate a legitimate, non-discriminatory reason for its employment action, and in response the plaintiff must prove that the employer's proffered non-discriminatory reason is a pretext for discrimination." Id. A similarly situated employee is an individual that "is similarly situated with respect to performance, qualifications, and conduct. For purposes of showing that two employees were similarly situated, the employees normally must have dealt with the same supervisor, [been] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Nowack v. OCE-USA, Inc., 03 C 9202, 2004 U.S. Dist. LEXIS 24322, 22-23 (N. D. Ill. November 30, 2004) (Aspen, J.). The "similarly-situated" requirement "should not be applied mechanically or inflexibly." Humphries v. CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007). The standard is "a flexible one that considers all relevant factors, the number of which depends on the context of the case."Id. Further, an employee "need not show complete identity in comparing himself to the better treated employee, but he must show

substantial similarity." Id. When evaluating this prong of the test, one must remember that at the summary judgment stage the plaintiff "need not *prove* anything" but just produce evidence that could lead a finder of fact to infer discrimination. Id.

In the present case, Defendant has conceded that Cadenas can meet the first three elements of a *prima facie* case in that Cadenas was pregnant, her employer knew she was pregnant, she was performing her job satisfactory, and that she was terminated from her employment. Here, Cadenas can present similarly, situated, non pregnant employees who were treated more favorably because none of the other Certified Nursing Assistants who worked for Defendant were terminated based upon the mere possibility of future work restrictions. (Pl.'s 56.1(b)(3)(C) Stmt ¶¶25-26). Soppi was the primary decision maker who hired and fired Certified Nursing Assistants for the Defendant. (*Id.* ¶23). Company policy requires that "[e]ach employee hired is expected to fulfill the essential physical requirements of the job description of his or her position." (Def's Rule 56.1 Stmt. ¶21). Cadenas was willing and able to perform all job duties without work restrictions as a Certified Nursing Assistant working on behalf of Defendant on May 17, 2012. (Pl.'s 56.1(b)(3)(C) Stmt ¶35). Soppi was required by law to treat Cadenas in the same manner as any other non pregnant female or male certified nursing assistant without work restrictions at the time that Cadenas was fired. 42 U.S.C. §2000(e)(5)(g). Similar to the *Malondado* case in which the Seventh Circuit held that a genuine issue of material fact existed in that a worker was terminated one day after she disclosed to her supervisor that she was pregnant, the court held that treating pregnant women differently because of the possibility of future inconvenience is discriminatory. <u>Maldonado v. U.S. Bank</u>, 186 F.3d 759 (7th Cir. 1999). Yesenia Alvarez, Ronet Mondee, Wendy Horan, and Esmerald

Ortega were all non pregnant females employed by Defendant who did not suffer an adverse employment action because of the possibility of future work restrictions. (Pl.'s 56.1(b)(3)(C) Stmt ¶35) Kenneth Reyes was a male Certified Nursing Assistant employed by Defendant who did not suffer an adverse employment action on May 17, 2012 because of the possibility of future work restrictions. (*Id.¶*26).

**B. Plaintiff Can Show a Triable Fact Concerning Pretext With Respect to Her Title VII Claims.**

Using the indirect method of proof for Plaintiff's sex and pregnancy discrimination claims leads us to the issue of pretext. Once a plaintiff has established a *prima facie* case, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." King v. Preferred Technical Group, 166 F.3d 887, 892 (7th Cir. 1999). If the defendant is able to rebut the prima facie case, 'the plaintiff, then, has the opportunity to demonstrate that 'the proffered reason was not the true reason for the employment decision' and that the employee's participation in the protected activity was, in fact, the real reason for the employment action at issue.' Id. (quoting Texas Bureau of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)). One can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision. Hitchcock v. Angel Corps, Inc., 718 F.3d 733, 738 (7th Cir. 2013).

In the present case, Soppi, Defendant's human resource director allowed Cadenas to continue working after she received the first doctor's letter with restrictions. (Pl.'s 56.1(b)(3)(C) Stmt ¶14). Soppi left Cadenas a voice mail requesting that she obtain a second letter without work restrictions. (*Id.¶*13). Although Soppi has admitted in her deposition that the first doctor's letter with work restrictions meant that she would need to

remove Cadenas from the schedule, it is undisputed that Soppi was aware that Cadenas was working without a letter removing the restrictions. (*Id.* ¶14, ¶39). Further, Soppi has stated that Cadenas "voluntarily resigned" without Cadenas issuing a written resignation letter to the Defendant. (*Id.* ¶30). Soppi also stated under oath and subject to cross examination in an unemployment hearing that she terminated Cadenas. (*Id.* ¶33). Soppi agrees that Cadenas complied with Soppi's request to obtain the second doctor's letter without restrictions. (*Id.* ¶35). In fact, Cadenas scheduled an appointment within a few days after receiving the message to obtain a second note from her doctor without restrictions. (*Id.* ¶16) It is only in its motion for summary judgment that the Defendant has finally conceded that Cadenas suffered an adverse employment action. (*Id.* ¶34) However, similar to the recent Seventh Circuit *Hitchcock* case in which the court held that shifting reasons for the termination of a employee could be considered pretext, the Defendant's explanations for Cadenas' separation from her employment have ranged from an alleged "voluntary resignation" until its final concession in his motion that Cadenas suffered an adverse employment action. *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 738 (7th Cir. 2013). To that extent, the present case is on point with *Hitchcock* and supports that Defendant's shifting and inconsistent explanations as to why Cadenas was separated from her employment reflect that the employer's alleged legitimate nondiscriminatory reason is a lie. (*Id*). It is this contradiction that places Defendant's honesty and credibility into question. As such, a jury should be allowed to make this factual determination as to the Defendant's alleged reason for Cadenas' termination.

## **CONCLUSION**

In light of the foregoing, Defendant's Motion for Summary Judgment should be denied and Count II of the Complaint is hereby voluntarily withdrawn.

                                                Respectfully submitted,

                                                Araceli Cadenas

                                                By: /s/ Wilton A. Person
                                                    Attorney for Plaintiff

Wilton A. Person
*Attorney for Plaintiff*
The Law Office of Wilton A. Person
24330 Leski Lane
Plainfield, Illinois
815-254-2467

Dated: August 21, 2013

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Araceli Cadenas<br><br>**PLAINTIFF,**<br><br>v.<br>Butterfield Health Care Group, Inc. and<br>Butterfield Health Care II, Inc. d/b/a<br>Meadowbrook Manor of Naperville<br><br>**DEFENDANTS** | **Case No. 12 cv 7750**<br>Hon. John J. Tharpe Jr. |

### CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2013, I electronically filed the foregoing **Memorandum of Law in Opposition to Defendant's Summary Judgment Motion** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following:

Mary Ellen Vales
Ross H. Friedman
Morgan, Lewis & Bockius LLP
77 West Wacker Drive |
Chicago, IL 60601-5094

                s/Wilton A. Person
                _____

                Wilton A. Person, Attorney for Plaintiff