UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARACELI CADENAS,<br><br>Plaintiff,<br><br>v.<br><br>BUTTERFIELD HEALTH CARE GROUP, INC. AND BUTTERFIELD HEALTH CARE II, INC. D/B/A MEADOWBROOK MANOR OF NAPERVILLE,<br><br>Defendant. | Case No.: 12-cv-7750<br>Hon. John J. Tharp, Jr. |

**DEFENDANTS' LOCAL RULE 56.1(a) RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL MATERIAL FACTS**

Defendants Butterfield Health Care Group Inc. and Butterfield Health Care II, Inc. d/b/a

Meadowbrook Manor of Naperville ("Meadowbrook"), by their attorneys and pursuant to Rule

56 of the Federal Rules of Civil Procedure and Local General Rule 56.1(a) of the United States

District Court for the Northern District of Illinois, respectfully submit their Response To

Plaintiff's Local Rule 56.1(b)(3)(C) Statement Of Additional Material Facts in further support of

their Motion for Summary Judgment against Plaintiff Araceli Cadenas ("Cadenas")[1].

**A. Araceli Cadenas' Employment with Defendant Meadowbrook Manor**

1.      Araceli Cadenas, hereafter, "Cadenas" worked for Defendant Butterfield Health Care II, Inc. d/b/a Meadowbrook Manor of Naperville, "hereafter" Defendant as a Certified Nursing Assistant from September 20, 2011 until she suffered an adverse employment action on May 17, 2012.  Pl. Ex. B, Soppi Dep. Pg. 27: 8-22; Pl. Ex. A., Cadenas Excerpt Dep. Pg. 6: 13-18; Pl. Exhibit F, see also Defendant's Tab B, Deposition Ex. 5. CAD 000001, Def. Memo pg. 6, Fn. 4.

---

[1] Citations to Defendants' Local Rule 56.1(a)(3) Statement of Uncontested Material Facts in Support of Their Motion for Summary Judgment appear as "*Def. Facts* ¶ __." Citations to Defendants' Memorandum of Law in Support of its Motion for Summary Judgment appear as "*Def. Mem*. at __." Citations to Plaintiff's Response to [Defendants'] Statement of Facts Pursuant To Local Rule 56.1(d) appear as "*Pl. Resp. Facts* ¶ __." Citations to Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Material Facts appear as "*Pl. Add. Facts*, ¶ __." Citations to Cadenas' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment appear as "*Pl. Opp*. at __."

**RESPONSE:** Admitted in part. Defendant admits that Cadenas began working for

Meadowbrook on September 20, 2011 and that in a May 17, 2012 document entitled "Personnel

Change of Status," Cadenas' status was listed as a "resignation." *Def Facts*, ¶ 43. Defendant

Meadowbrook concedes, for purposes of its motion for summary judgment only, that Cadenas

suffered an adverse employment action.

2.       On September 20, 2011, Cadenas was provided an employee handbook when she was hired by Defendant. Defendant's Tab A, Cadenas Dep. Ex. 2. Pl. Ex. B, Soppi Dep, Pg. 14: 20-22, Pg. 15: 1-3, Pg. 16: 2-5; Pl. Ex. A, Cadenas Dep. Pg. 5: 17-21; Ex. K, Dec. of Araceli Cadenas, Pg. 1, ¶6.

**RESPONSE:** Admitted.

3.       There was not any information within Defendant's employee handbook provided to Cadenas about Defendant's "light duty policy". Pl. Ex. B, Soppi Dep, Pg. 14: 20-22, Pg. 15: 1-3, Pg. 16: 2-5; Pl. Ex. A, Cadenas Dep. Pg. 5: 17-21; Ex. K, Dec. of Araceli Cadenas, Pg. 1, ¶6.

**RESPONSE:** Admitted. This fact is immaterial for purposes of summary judgment, however,

as Cadenas has presented no claim for an entitlement to relief based on the fact that

Meadowbrook's light duty policy was not included in its employee handbook, and she concedes

that Meadowbrook maintained the light duty policy in question. *Pl. Opp.* at 1-2; Exhibit A to

*Def. Resp. to Pl. Add. Facts*, at 48:21-24, 49:1-4.

4.       There was not any information within Defendant's handbook about the presentation of a doctor's letter being considered a voluntary resignation by Defendant. Pl. Ex. K, Dec. of Araceli Cadenas, Pg. 1:¶7; Pl. Ex. E, see also Defendant's Tab C, Exhibit A, CAD 0000139.

**RESPONSE:** Admitted.

5.       During Cadenas' employment with Defendant, Defendant never held any seminars regarding its "light duty" policies. Pl. Ex. K, Dec. of Araceli Cadenas, Pg. 1, ¶8.

**RESPONSE:** Admitted.

6.       Cadenas first learned of Defendant's "light duty" policy after becoming pregnant and presenting Defendant's Human Resource Director, Joan Soppi, hereafter, "Soppi" on May 7, 2012 with a letter from her doctor requesting work restrictions. Pl. Ex. K, Dec. of Araceli Cadenas, Pg. 1, ¶8.

**RESPONSE:** Admitted.

7.      Cadenas was considered to be a good worker by Defendant. Pl. Ex. B, Soppi Dep. Pg. 16: 22, Pg. 17: 1.

**RESPONSE:** Admitted.

8.      Cadenas did not have any instances of employee performance problems. Pl. Ex. B, Soppi Dep. Pg.17: 8-9.

**RESPONSE:** Admitted.

**B. Cadenas' Pregnancy and Dr. Dawn Collier's First Letter**

9.      Cadenas presented Soppi with a letter requesting work restrictions from her obstetrician, Dr. Dawn Collier, on May 7, 2012. Pl. Ex. A., Cadenas Excerpt Dep. Pg. 8: 13-17.

**RESPONSE:** Admitted in part.  Defendants admit that at some point between May 7 and May 17, 2012, Cadenas presented Soppi with the first letter from Dr. Collier.  *See Def. Facts*, ¶¶ 31-34.

10.      Soppi was aware that Araceli Cadenas was pregnant. Pl. Ex. B, Soppi Dep. pg. 17: 10-22.

**RESPONSE:** Admitted.

11.      On May 7, 2012, Soppi advised Cadenas that she would need to obtain a note without any restrictions in order for Cadenas to continue working for Defendant. Pl. Ex. A, Cadenas Excerpt Dep. Pg. 5:13-16.

**RESPONSE:** Admitted in part.  When Cadenas delivered the first letter to Soppi at some point between May 7 and May 17, 2012, Soppi advised Cadenas that Meadowbrook did not provide light duty to individuals not injured on the job, and that Cadenas would not be able to work with the restrictions specified in the letter.  Exhibit A to *Def. Resp. to Pl. Add. Facts*, at 48:21-24, 49:1-4.  Soppi informed Cadenas that she would be taken off the schedule until she delivered her baby.  On December 12, 2012, Soppi confirmed this fact by writing Cadenas a letter offering to unconditionally return Cadenas to her position as a C.N.A.  *See Def. Facts*, ¶¶ 35-36, 47.

12.     Soppi told Cadenas that she could continue to work through the end of the week. Pl. Ex. A, Cadenas Dep. Pg. 8: 13-20; Pl. Ex. H, Def. Response to Plaintiff's Second Request to Produce.

**RESPONSE:**  Disputed.  The assertion in Paragraph 12 is not supported by the citations, and is contradicted by Cadenas' own deposition testimony.  In the cited testimony, Cadenas asserts only that she continued to work after May 7, _not_ that Soppi told her that she could continue to work.  In addition, Cadenas testified that when she gave Soppi the first letter, Soppi advised Cadenas that Meadowbrook did not provide light duty to individuals not injured on the job, and that Cadenas would _not_ be able to work with the restrictions specified in the letter.  Exhibit A to _Def. Resp. to Pl. Add. Facts_, at 48:21-24, 49:1-4.  Finally, Soppi testified that when she received the first letter, she removed Cadenas from the working schedule.

13.     On May 11, 2012, Soppi left a voice message reminding Cadenas about obtaining a second letter from her doctor that did not have any work restrictions. Pl. Ex. B, Soppi Dep Pg. 20: 5-11, Pg. 21: 20-22, Pg. 22:1-14; Defendant's Tab A, Cadenas Dep. Pg. 84, 11-24, Pg. 85: 1; Defendant's Tab C, Exhibit C; see also Pl. Exhibit F.

**RESPONSE:**  Admitted in part.  Admit that Soppi left a voice mail message for Cadenas at some point between May 7 and 15 informing her that Meadowbrook does not offer light duty to pregnant employees, that she needed a note lifting her restrictions in order to return to work, and that until she was released to full duty, Soppi would need to remove her from the schedule. _See Def. Facts_, ¶¶35-36.  This dispute regarding the exact date of the voicemail, however, fails to create a genuine issue of material fact because the specific date Cadenas was informed that she would need a note lifting her restrictions is irrelevant.  Moreover, it is undisputed that Cadenas never produced a doctor's note releasing her to full duty.

14.     Soppi was aware that Cadenas continued to work after she was presented with the first letter from Dr. Collier. Defendant's Tab C, Exhibit C; see also Pl. Exhibit F; Pl. Ex H, Def. Response to Plaintiff's Second Request to Produce.

**RESPONSE:** Disputed. The assertion in Paragraph 14 is not supported by the citations. Defendant's Tab C, Exhibit C does not state that Soppi was aware that Cadenas continued to work after the first letter; to the contrary, Soppi testified that Cadenas was taken off the schedule after Soppi received the first letter. Exhibit Tab B to *Def. Facts*, at 20:16-19, 22:1-6. Plaintiff's Exhibit F is a "Personnel Change of Status" form that does not indicate in any way that Cadenas continued to work after the first letter, let alone that Soppi knew of such work. Plaintiff's Exhibit H is Cadenas' EEOC Notice of Right to Sue, which says nothing about her working after submitting the first letter. Finally, Defendant's response to Cadenas' Second Request to Produce shows only that Cadenas worked until May 13, not that Soppi was aware of any such work (and does not shed any light on when Cadenas delivered the first letter to Soppi).

However, this dispute does not raise a genuine issue of material fact that would preclude the entry of summary judgment. Regardless of whether Cadenas worked for a few days following the delivery of the first letter, there is no dispute that Cadenas was unable to procure a doctor's note lifting all medical restrictions. *Def. Facts*, ¶¶ 39, 42.

15.     Cadenas' next scheduled work date after May 13, 2012 was May 15, 2012. Pl. Ex. A, Cadenas Excerpt Dep. Pg. 7:18, Def. 56.1 Statement ¶37.

**RESPONSE:** Admitted. *See Def. Facts*, ¶ 37.

16. On the morning of May 15, 2012, Cadenas called off from work because she had scheduled a doctor's appointment to comply with Soppi's request for a letter without work restrictions. Pl. Ex. A, Cadenas Excerpt Dep. Pg. 1:12; Pl. Ex. K, Dec. of Araceli Cadenas, Pg. 1-2, ¶¶16-18.

**RESPONSE:** Disputed. The assertion in Paragraph 16 is not supported by the citation. The cited excerpt from Cadenas' deposition does not even contain testimony – it is the cover page. Moreover, Meadowbrook's records show that Cadenas was a no-call/no-show on May 15.

Cadenas' "Timecard Report" states "did not come in on 5/15/12 ? No call." Exhibit B to *Def. Resp. to Pl. Add. Facts*.

17.     Defendant's Meadowbrook Manor's policy was that a certified nursing assistant may call off work if he or she calls at least two hours before the certified nursing assistant's start time. Pl. Ex. K, Dec. of Araceli Cadenas, Pg. 2, ¶18.

**RESPONSE:** Admitted.


18.     At the May 15, 2012 doctor's appointment, Cadenas requested and received a second letter from Dr. Collier that removed all work restrictions to comply with Soppi's request. Pl. Ex. B, Soppi Dep. Pg. 26: 1-14; Pl. Ex. A, Cadenas Excerpt Dep. Pg. 11: 22-24; Pl. Ex. D.

**RESPONSE:** Disputed.  Cadenas' new doctor's note did not remove all restrictions.  In fact, it

unquestionably stated that the same weight restrictions would be in effect as of twenty weeks of

gestation. *See Def. Facts*, ¶ 39.

**C. Araceli Cadenas' Termination and Doctor Dawn Collier's Second Letter**

19.     On May 17, 2012, Cadenas presented the second letter from Dr. Collier without work restrictions to Soppi who responded that she had to "let her go" because the second letter said that the work restrictions would be placed back on at twenty weeks pregnant. *801(2)(d)Hearsay Exception Admission by a Party Opponent.*

**RESPONSE:** Disputed.  The assertion in Paragraph 19 contains no citation, and therefore

should be disregarded.

20.     Soppi admitted that she never sent any notice that Araceli Cadenas was terminated or that she considered her to be resigned. Pl. Ex. B, Soppi Dep. Pg. 33: 18-21.

**RESPONSE:** Admitted in part.  Soppi testified that she did not remember sending Cadenas

notice of her termination/resignation.

**D. Termination of Employment-Meadowbrook Manor Employee Manual**

21.     Defendant's employee handbook states that an employee may be disciplinarily discharged, may voluntarily resign, may be considered to have abandoned his or her employment by missing three consecutive work days, or may be laid off for economic reasons. Pl. Ex. E, see also Defendant's Tab C, Exhibit A,CAD 0000139.

**RESPONSE:** Admitted.

22.     Araceli Cadenas did not voluntarily resign her CNA position with Defendant. Cadenas Excerpt Dep. Pg. 11: 15-20.

**RESPONSE:**  Disputed.  Cadenas was considered to have voluntarily resigned after presenting

Soppi with a doctor's note that included weight restrictions precluding her ability to work as a

C.N.A.  *See Def. Facts*, ¶¶ 33-43.  This dispute is immaterial, however, as for the purposes of

this motion, Defendants conceded that Cadenas was subject to an adverse employment action.

**E. Araceli Cadenas is Terminated because of her Pregnancy**

23.     A personnel change form would not be final until the administrator Patty Stambaugh signed the personnel change form. Pl. Ex. B, Soppi Dep. Pg. 16:22, Pg. 17: 1.

**RESPONSE:**  Admitted.

24.     Upon receipt of Dr. Collier's second letter without employment work restrictions, Soppi, as the primary decision maker for Defendant, had the authority to allow Cadenas to continue working. Pl. Ex. B, Soppi Dep Pg. 4: 8-16.

**RESPONSE:**  Admitted.

25.     Joan Soppi was aware that Araceli Cadenas did not have any work restrictions on May 17, 2012. Pl. Ex. B, Soppi Dep Pg. 26: 1-14.

**RESPONSE:**  Admitted in part.  Soppi testified that she had "no idea" when she received the

second letter dated May 15.  The dispute is immaterial, however, because as of May 17, Cadenas

was no longer employed.

**F. Similarly Situated Certified Nursing Assistants**

26.     Yesenia Alvarez, Ronet Mondee, Wendy Horan, and Esmerald Ortega were all non pregnant females employed by Defendant who did not suffer an adverse employment action on May 17, 2012 because of the because of the possibility of future work restrictions. presentation of a Doctor's letter without work restrictions [sic]. Pl. Ex. K, Dec. of Araceli Cadenas, P.3, ¶25.

**RESPONSE:**  Denied.  The assertions in Paragraph 26 regarding individuals allegedly similarly

situated to Cadenas conflict with her deposition testimony, in which she pointed to only two

individuals who she believed were similarly situated to her.  The dispute does not create a

genuine issue of material fact, however, as Cadenas is required to point to similarly situated

comparators—that is non-pregnant individuals, who in all other respects were substantially

similar to Cadenas at the time she suffered an adverse employment action. *Radue v. Kimberly-*

*Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000). Cadenas makes no attempt to show that these

would-be comparators were non-pregnant employees who, after presenting Meadowbrook with a

medical restriction that would necessarily preclude their ability to work at Meadowbrook for an

extended period of time such as five or six months, were treated more favorably than Cadenas.

Therefore, Meadowbrook disputes the characterization of these individuals as "similarly

situated."

27.     Kenneth Reyes was a male Certified Nursing Assistant employed by Defendant who did not suffer an adverse employment action on May 17, 2012 because of the possibility of future work restrictions. Pl. Ex. K, Dec. of Araceli Cadenas P.3, ¶26.

**RESPONSE:** Denied. See response to Paragraph 26.

## G. Shifting and Inconsistent Explanations

28.     At her April 11, 2013 deposition, Soppi stated that Defendant had voluntarily resigned Cadenas from her position as a certified nursing assistant. Pl. Ex. B, Soppi Dep Pg. 23:1-22, Pg. 24:1-14.

**RESPONSE:** Admitted. *See Def. Facts*, ¶¶ 38, 42-43.

29.     Araceli Cadenas did not verbally tell Joan Soppi that she was resigning. Cadenas Excerpt Dep. Pg. 11:15-20.

**RESPONSE:** Admitted.

30.     Araceli Cadenas did not issue a resignation letter in writing to Joan Soppi or any other Defendant employee. Pl. Ex. B, Soppi Dep Pg.24: 4-14; Cadenas Excerpt Dep. Pg. 11: 15-20.

**RESPONSE:** Admitted.

31.     Even after reading the language regarding "voluntary resignations" in Defendant's Employee Handbook, Soppi maintained that the Defendant had "voluntarily resigned" Cadenas.

Pl. Ex. B, Soppi Dep. Pg. 31: 10-22, Pg. 31:1-7., See generally, Pl. Ex. J, Defendant's Answer to ¶16 of Cadenas' Complaint.

**RESPONSE:** Admitted. *See Def. Facts*, ¶¶ 36, 42.

32.     Soppi admitted that the second letter from Cadenas's doctor that she considered to be Cadenas' resignation letter was not written by Cadenas. Pl. Ex. B, Soppi Dep., Pg. 32:5-11.

**RESPONSE:** Admitted. *See Def. Facts*, ¶ 39.

33.     On February 5, 2013 at Cadenas' Illinois Department of Employment Security Unemployment Hearing, Soppi stated under oath and subject to cross examination that she had "termed" Araceli Cadenas. Pl. Ex. K, Dec. of Araceli Cadenas, Pg. 3, ¶32.
**RESPONSE:**

Disputed. The assertion in Paragraph 33 is inadmissible hearsay. In any event, in her

deposition, Soppi further equated the word "termed" with "having resigned." Exhibit Tab B to

*Def. Facts*, at 23:15-22, 24:1-6.

34.     Defendant has conceded that Cadenas suffered an adverse employment action. Def. Memo. pg. 6, Fn. 4.

**RESPONSE:** Disputed. In its memorandum in support of summary judgment, Meadowbrook

stated that it "assumed," for the purposes of the summary judgment motion, that Cadenas met the

third element of the *prima facie* case – that she suffered an adverse employment action.

35.     Araceli Cadenas was willing and able to perform all job duties without restrictions as a Certified Nursing Assistant working on behalf of Defendant on May 17, 2012. Pl. Ex.B, Soppi Dep. Pg. 24:15-22, Pg. 25: 1-2, Pg. 26:1-14; Cadenas Excerpt Dep. Pg. 11, 22-24, Pg. 12: 1-12; Pl. Ex. C.

**RESPONSE:** Admitted. This fact is immaterial, as Cadenas' employment had already ended by

May 17. Moreover, she did not receive a note from her medical provider lifting *all* restrictions.

*See Def. Facts*, ¶¶ 36, 39.

36.     Defendant's own business records reflect that Cadenas worked for five additional days after Soppi received the first doctor's letter. Pl. Ex. H, Def. Response to Plaintiff's Second Request to Produce.

9

**RESPONSE:** Disputed. Cadenas has pointed to no evidence other than her unsupported assertions that she presented the May 7, 2012 note from Dr. Collier to Soppi on May 7, 2012. Therefore, it is unknown whether Cadenas did indeed continue to work for Meadowbrook after presenting the first note to Soppi. Moreover, Cadenas conceded that Soppi told her she could not work immediately after receiving the first letter. Exhibit A to *Def. Resp. to Pl. Add. Facts*, at 41:9-23.

37. Defendant's personnel change form has a space for the employee's signature but the form was not signed by Cadenas. Pl. Ex. F.

**RESPONSE:** Admitted.

38. Soppi was the Defendant's primary decision maker who hired and fired certified nursing assistants. Pl. Ex. B, Soppi Dep Pg. 4: 8-16.

**RESPONSE:** Admitted.

39. Soppi admitted in her deposition that she would need to remove Cadenas from the schedule because of the receipt of the first doctor's letter with work restrictions. Pl. Ex. B, Soppi Dep. Pg. 18: 18-22, 22: 1-10.

**RESPONSE:** Admitted.

Dated: September 12, 2013                    Respectfully submitted,

                                             MEADOWBROOK MANOR OF NAPERVILLE

                                             By:/s/ *Ross H. Friedman*
                                                 One of Their Attorneys

                                             MORGAN, LEWIS & BOCKIUS LLP
                                             77 W. Wacker Drive, 5th Floor
                                             Chicago, IL 60601
                                             Telephone: (312) 324-1172
                                             Facsimile: (312) 324-1001
                                             Email: rfriedman@morganlewis.com

                                             *Attorney for Meadowbrook*

## <u>CERTIFICATE OF SERVICE</u>

I, Ross H. Friedman, one of the attorneys for Defendant, certify that I filed the foregoing

**Defendants' Local Rule 56.1(a) Response To Plaintiff's Local Rule 56.1(b)(3)(C) Statement**

**of Additional Material Facts** and it was served on the following via the ECF/CMF system:

Wilton A. Person
24330 Leski Lane
Plainfield, IL 60585
(815) 254-2467
wperson@personlaw.com

/s/ Ross H. Friedman
Ross H. Friedman

DB1/ 75771012.1

11